UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUIS A. RODRIGUEZ, on behalf of himself and others similarly situated, | |
| Plaintiff, | Civ. No. _15-cv-2590 (JSR)_ |
| -against- | |
| CALVIN KLEIN, INC., and PVH CORPORATION, | **CLASS ACTION COMPLAINT** |
| Defendants. | **(Trial by Jury Demanded)** |

On behalf of himself and all others similarly situated, Plaintiff Luis A. Rodriguez ("Plaintiff" or "Mr. Rodriguez"), through his attorneys, the Law Office of Adam G. Singer and Francis & Mailman, P.C., respectfully alleges as follows:

### NATURE OF THE ACTION

1.      This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA"), brought on behalf of applicants for employment with Defendant Calvin Klein, Inc. ("Calvin Klein") and Defendant PVH Corporation ("PVH"), a branded lifestyle apparel company.  Plaintiff contends that Defendants systematically violate section 1681b(b)(3) of the FCRA by using consumer reports to take an adverse employment actions without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of rights under the FCRA, leaving the person who is the subject of the report without any meaningful opportunity to correct any errors on the report.

2.      The FCRA regulates the use of "consumer reports" for employment purposes, commonly called "background reports."  Congress included in the statutory scheme a series of

due-process-like protections that impose strict procedural rules on "users of consumer reports," such as Calvin Klein and PVH.  This action involves Defendants' systematic violations of several of those important rules.

3.      Plaintiff was denied employment as a manager at Calvin Klein store based upon a standardized background screen conducted by HireRight Solutions, Inc. ("HireRight") pursuant to an agreement between HireRight and Defendants whereby HireRight performs a standardized background screen on all of Defendants' candidates for hire or promotion.  HireRight adjudicated Plaintiff as not eligible for the job based upon the purported existence of multiple felony and misdemeanor charges and convictions.  These crimes, however, do not belong to or relate to Plaintiff.

4.      In violation of the FCRA, Defendants willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide a copy of the inaccurate background report they obtained from HireRight, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3).  Every year, individuals who have applied to Calvin Klein and PVH for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

5.      Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for himself and classes of similarly situated employment applicants for whom Defendants failed to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## PARTIES

6.      Plaintiff is an adult individual residing in Fort Lauderdale, Florida.

7.    Defendant Calvin Klein regularly conducts business in the Southern District of New York.  Defendant Calvin Klein is a subsidiary of PVH and has a principal place of business at 200 Madison Avenue, New York, NY 10016.

8.    Defendant PVH is the parent of over 33 American subsidiary branded lifestyle apparel brands and companies,[1] and has a principal place of business at 24 North Wantagh Avenue, Levittown, NY 11756.  Defendant PVH markets itself as "one of the largest branded lifestyle apparel companies."  http://www.pvh.com.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*

10.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendants "reside" in this District as defined in 28 U.S.C. § 1391(c).

## STATEMENT OF FACTS

### Background:  Defendants' Use of HireRight's Screening Activities

11.    HireRight was among the largest of the nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.  HireRight also sold background reports to the U.S. Government including the inaccurate report on Edward Snowden.

12.    HireRight investigated and reviewed public record and private databases and assembled and/or maintained consumer files which contained public record information concerning, among other things, the alleged criminal record history of individuals.

---

[1]    *See* Exh. 21 to PVH's 2013 Annual Report, available at https://www.sec.gov/Archives/edgar/data/78239/000007823914000017/pvh10k2013ex21.htm.

13.     From its files, HireRight sold consumer reports to potential employers (such as Defendants) wishing to review the criminal record history, or lack thereof, of various job applicants or employees.  According to its website, HireRight "serves 70% of the Fortune 100." http://www.hireright.com.

14.     In addition to providing background reports, HireRight provided to its employment screening customers an additional service which it called "adjudication."  Under this service HireRight scored an applicant eligible or ineligible for employment based upon an adjudication "matrix" that the customer developed with HireRight using its hiring criteria. Reports were then adjudicated by HireRite either "meets company standards" or "pending," accordingly.  http://www.hireright.com/solutions/additional-services/adjudication

15.     The adjudication service is attractive to HireRight's customers such as Calvin Klein and PVH who are constantly hiring and promoting in very large volumes because it provides the customer with a remote, outsourced tool to make its employment decisions rapidly.

16.     HireRight offered its customers the possibility of using its screening service in a "pre-employment" hiring environment, meaning as a preliminary screen of applicants, or in a "post-employment" hiring environment, meaning as the final stage in the hiring/promotion process.  In a "post-employment" environment, HireRight customers used the service to screen consumers who have already been selected for hire or promotion, subject to the results of the background screen.

17.     PVH's Human Resources Department used and/or continues to use HireRight's screening services to conduct credit checks, criminal background checks, and drug tests on applicants for employment with all of its subsidiaries in the United States, including Calvin

Klein.  The background reports resulting from these services, including HireRight's adjudication services, are delivered directly to PVH.

18.     PVH orders and receives background reports from HireRite for candidates to be placed with Calvin Klein, and Calvin Klein also uses such reports to determine who will work in its stores.

19.     Defendants' collaboration in hiring staff is seasonal in nature.  Defendants are often in a hurry to fill the positions during particularly busy seasons when Calvin Klein needs to accommodate higher volumes of consumer purchases.

20.     Despite Defendants' goals of hiring many workers throughout the country in a short amount of time, and despite the nature of mistakes in consumers reports and background checks, especially those prepared by HireRight, Defendants choose, but are not required, to screen their job applicants through background reports.

21.     Once HireRight adjudicates an applicant as ineligible for employment on a background report (because that applicant purportedly has a criminal court record, for example) that adjudication removes an applicant from hiring consideration with Defendants.

22.     Defendants will, in effect, adopt HireRight's adjudication as their own, without any further process given to the job applicant, and take adverse action based upon that adjudication.

23.     As in the case of Plaintiff, Defendant will move forward with the applications of other candidates, but not those applicants adjudicated HireRight as not meeting Defendants' hiring criteria by HireRight.

24.     Indeed, Defendants will not even reconsider that applicant for future employment unless HireRight "clears" that applicant and notifies Defendants electronically that the applicant has in fact been cleared.

25.     Under the FCRA, any "person" using a consumer report, such as PVH and Calvin Klein , who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A); *see also Goode v. LexisNexis Risk & Info. Analytics* 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012) (more than one business can be a user of a single background report; "Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b). Thus, defendant is a person and must comply with § 1681b(b)(3)(A).").

26.     There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA.  The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete."  *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

-6-

27.     A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

28.     Numerous courts interpreting the FCRA have found FTC opinion letters persuasive. *See, e.g., Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006). *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

29.     Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report." *Williams v. Telespectrum, Inc.*, 2006 U.S. Dist. LEXIS 101162, at *18 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 2266 (E.D. Va. Jan. 11, 2008) (quoting *Williams*). In *Reardon v. Closetmaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

30.     The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the job applicant that he is about to experience an adverse action, such as a rejection, based on the content of a report, and to provide him or her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect or job is lost.

31.     Defendants typically do not provide job applicants with a copy of their consumer reports or a statement of their FCRA rights before they take adverse action against them based upon the information in such reports, despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

32.     The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendants failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A).

### The Facts Pertaining to Class Representative Plaintiff Luis A. Rodriguez

33.     In or about mid-July 2014, Plaintiff Luis A. Rodriguez sought employment with Calvin Klein.

34.     Mr. Rodriguez interviewed for an open manager position and understood that the position for which he was applying was a full time managerial position, paying between $30,000 to $40,000 annual salary, overseeing floor operations and training staff, among other duties.  The opening needed to be filled promptly and Mr. Rodriguez was eager to start the onboarding process.

35.     After the interview, on or about July 21, 2014, PVH requested HireRight to conduct a background check, including a criminal history check, on Mr. Rodriguez, and to provide the results, including its adjudication, to PVH.

36.     Between July 24 and July 29, 2014, PVH received a background report, or a background report and also a supplement to the report with information that was not available immediately, from HireRight concerning Mr. Rodriguez which listed inaccurate criminal felony and misdemeanor records belonging to another unrelated Luis Rodriguez with a different middle name and other different personal identifying information.

37.     The background report provided by HireRight to PVH reported Hillsborough County criminal convictions for carrying concealed firearm (felony), two for driving while license revoked-habitual offender (felony), aggravated battery with a deadly weapon (felony), two for driving while license revoked-habitual offender (misdemeanor), driving while license suspended with knowledge (misdemeanor); as well as criminal charges for providing false name to law enforcement officer (misdemeanor), obstruction or opposing an officer (misdemeanor); and a Pinellas County criminal conviction for escape (felony).

38.     All the criminal record history reported by HireRight to Defendants was inaccurate.  Mr. Rodriguez has no criminal history, has never been arrested or charged with any crime, and the records on their face reflect a different middle name for many of the criminal records in question.

39.     Sometime between July 24 and July 30, 2014, PVH removed Plaintiff from hiring consideration based upon the HireRight background report, which adjudicated Mr. Rodriguez as being not eligible from employment with Defendants.

40.     Defendants adopted HireRight's adjudication as their own without any further process being provided to Mr. Rodriguez and took adverse action against Plaintiff based upon that adjudication.

41.     On or about July 30, 2014, PVH sent a letter to Mr. Rodriguez by regular mail, which Plaintiff did not receive until several days later.

42.     The July 30, 2014 letter stated, *inter alia*,

We are writing to inform you that your application for employment with our company was denied.  This decision was influenced in whole or in part by a consumer report prepared by HireRight Solutions, Inc.

43.     By the time the July 30, 2014 letter was received by Mr. Rodriguez, he was already denied the job at the Calvin Klein store based upon the consumer report that PVH had obtained from HireRight.

44.     The negative adjudication of Plaintiff's application occurred prior to Plaintiff being notified in writing of that fact and prior to Plaintiff being provided with a copy of the report or any meaningful opportunity to dispute it.  In doing so, Defendants failed to comply with the FCRA's pre-adverse action notification requirements.

45.     As a direct result of Defendants' unlawful adoption and use of the HireRight background report and HireRight's adjudication of Mr. Rodriguez's employment application, Mr. Rodriguez lost the job at Calvin Klein.

46.     Mr. Rodriguez disputed the inaccurate criminal information in his background report on or about August 6, 2014, very soon after he learned that his job application was denied, by following HireRight's dispute procedures, and the background report was partially corrected on or about August 8, 2014.

47.     HireRight's representative Janell Brown confirmed by email to Mr. Rodriguez on August 8, 2014 that an updated copy of his background report was mailed to him that day.

48.     However, despite sending numerous follow-up emails to Latoya Malcolm, PVH HR Manager, and his other contacts at Calvin Klein and PVH on August 11, 2014, August 12,

2014, August 13, 2014, and August 18, 2014, Mr. Rodriguez was not able to resuscitate the job

opportunity that he has already lost due to the adjudication.

       49.    The final response Mr. Rodriguez received from PVH was an August 18, 2014

email from Ms. Malcolm stating, *inter alia*:

> Unfortunately we made a hiring decision on the position because our store needed the position filled *immediately.*
>
> However I called and left a message on Friday but have not received a call back from Dory (our Hire Right rep). I know you have the paperwork saying everything is cleared but *I would also need to [sic] email that's sent to us each day about all the cleared applicants from the Hire Right dept.* When I receive that, then I can keep your information should future needs arise.
>
> Thank you and please accept my sincerest apologizes [sic] about the issue that the mix up has caused…. (Emphasis added)

Therefore, not only did Mr. Rodriguez miss out on the managerial opening in August 2014, but

he is ineligible for any future employment positions with PVH or its subsidiaries until PVH's HR

department receives a daily transmission reporting him as a "cleared applicant." This policy

affects untold other consumers in a similarly Kafkaesque dispute resolution cycle.

## CLASS ACTION ALLEGATIONS

       50.    Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a)

and 23(b)(3) on behalf of the following Classes:

> (a) All applicants for employment with PVH or any subsidiary thereof residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report obtained from HireRight that was used by PVH and/or its subsidiaries to take an adverse employment action regarding such applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom PVH and/or its subsidiaries failed to provide the applicant a copy of his or her consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

(b) All applicants for employment with Calvin Klein residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a background report obtained from HireRight to PVH and used to take an adverse employment action regarding such applicant for employment, within five years prior to the filing of this action and extending through the resolution of this case, and for whom Calvin Klein failed to provide the applicant a copy of his or her consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

51.     Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

52.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that joinder of all is impractical. Upon information and belief, Defendants procure and use hundreds if not thousands of consumer reports on applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

53.     **Existence and Predominance of Common Questions of Law and Fact. FED. R. CIV. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

(a)     Whether Defendants failed to provide each applicant for employment a copy of their consumer report at least five business days before Defendants took adverse action based upon the consumer report;

(b)     Whether Defendants failed to provide each applicant for employment a copy of their written notice of FCRA rights at least five business days before Defendants took adverse action based upon the consumer report;

(c)     Whether Defendants acted willfully or negligently in disregard of the rights of employment applicants in their failure to permit their employees and automated systems

to send employment applicants their full consumer report and a written statement of their FCRA rights at least five business days before taking adverse action based on the consumer report.

54.    **Typicality. FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

55.    **Adequacy. FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Classes.  His interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.  Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

56.    **Predominance and Superiority. FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of

proof in a unified proceeding.

## CAUSE OF ACTION

### COUNT I
### Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)
### (On behalf of Plaintiff and Class)

57.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

58.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

59.     The HireRight background reports ordered by Defendants are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

60.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

61.     For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

62.     Defendants Calvin Klein and PVH are each a "person" that regularly uses HireRight background reports for employment purposes.

63.     The FCRA requires Defendants, as users of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

64.     Defendants willfully or negligently violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Classes the following before using such reports:  (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendants took adverse action on their employment applications.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A.      An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.      An award of actual, statutory and punitive damages for Plaintiff and the Classes;

C.      An award of pre-judgment and post-judgment interest as provided by law;

D.      An award of attorneys' fees and costs; and,

E.      Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests and demands a trial by jury.

Respectfully submitted,

BY: _____
ADAM G. SINGER
**LAW OFFICE OF ADAM G. SINGER**
14 S. Main Street, Suites 4 & 5
New City, NY 10956
T: 212.842.2428
F: 209.844.2428
E: asinger2@alumni.law.upenn.edu

**FRANCIS & MAILMAN, P.C.**
JAMES A. FRANCIS (*pro hac vice forthcoming*)
JOHN SOUMILAS (*pro hac vice forthcoming*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com

*Attorneys for Plaintiff and the Classes*

Dated:  April 2, 2015